IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| EVERGREEN NATIONAL INDEMNITY COMPANY, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | 10 C 1788 |
| R&W CLARK CONSTRUCTION, INC./CONTINENTAL CONSTRUCTION, a JOINT VENTURE; R&W CLARK CONSTRUCTION, INC.; CONTINENTAL CONSTRUCTION, INC.; RICK CLARK; MAUREEN CLARK; THOMAS W. ANDREWS; and ELIZABETH ANDREWS, | ) ) ) ) ) ) ) ) ) | Judge Virginia M. Kendall |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Evergreen National Indemnity Company ("Evergreen") issued certain Bonds to

R&W Clark Construction, Inc./Continental Construction, Inc., a joint venture ("the Joint Venture"),

to secure work on a construction project that the Joint Venture was attempting to perform for the

Hanover Park Park District. Construction of the project did not go according to plan, and when the

Joint Venture eventually defaulted, Evergreen was required under one of the Bonds to step-in and

complete the project. According to the General Indemnity Agreement entered into between

Evergreen and the Joint Venture, the Joint Venture was required to indemnify Evergreen for any

losses that Evergreen might incur as a result of being forced to take over construction and complete

performance. Evergreen claims that it has incurred substantial losses from having to complete the

construction project, but that the Joint Venture has not fulfilled its contractual obligation to

1

indemnify Evergreen for these losses. Evergreen therefore commenced suit in this Court against the Joint Venture, the constituent corporations, and the various individuals who are the principals of these corporations (collectively, "Defendants") for breach of contract, specific performance, exoneration and common law reimbursement. For the reasons set forth below, Evergreen's motion for summary judgment (Doc. 50) is granted. This Court grants summary judgment in favor of Evergreen on Count I of its complaint, seeking relief for breach of the Indemnity Agreement and on Count II of its complaint for breach of the Completion Agreement. Defendants are ordered to indemnify Evergreen for breach of the Indemnity Agreement and the Completion Agreement and pay Evergreen for its losses, expenses and fees in an amount no less than $210,249.56.

## I. Material Undisputed Facts

The material facts that give rise to this case are not in dispute. On or about August 28, 2006, the Joint Venture entered into a construction contract with the Hanover Park Park District to perform general contractor services for the construction of the Pedestrian Egress Alteration Project. (Def. 56.1 Resp. ¶ 9). In order to secure its obligations under the construction contract, the Joint Venture sought Performance and Payment Bonds from Evergreen. (*Id.*) On October 16, 2006, as a condition precedent to Evergreen issuing these Bonds for the benefit of the Joint Venture, Evergreen and the Joint Venture executed a General Indemnity Agreement naming the Joint Venture as the bonded principal. (*Id*. ¶ 10). As a further condition of issuing the Bonds, Evergreen required the Joint Venture to deposit funds as collateral security for performance of the Joint Venture's obligation under both the construction contract and the General Indemnity Agreement. (Doc. 51, Pl. Memorandum in Support of Motion for Summary Judgment Exhibit C, Miracle Aff. ¶ 8). These funds were to be held in accordance with the terms of the Indemnity Agreement. (*Id*.) As an

additional condition, the Joint Venture agreed to direct the Park District to pay all of the contract funds into a special escrow account. (Miracle Aff. ¶ 7). This account was created for the purposes of issuing payments of all fees and expenses related to the performance of the construction contract, including payments to the Joint Venture and to the Joint Venture's subcontractors and suppliers. (*Id.*)

Under the terms of the Performance Bond, in the event that the Joint Venture defaulted and precipitated the termination of its contract with the Park District, Evergreen would step in and complete the contract. (Def 56.1 Resp. ¶ 12; Miracle Aff. ¶ 9). In October of 2007, the Park District, after thrice sending notices of default to Evergreen and the Joint Venture, notified Evergreen of the Joint Venture's default and the termination of the contract. (Def 56.1 Resp. ¶ 12; Def. 56.1 Additional Facts ¶¶ 1-3). The Park District asserted a claim under the Performance Bond and demanded that Evergreen complete the construction contract. (Def 56.1 Resp. ¶ 12). Evergreen investigated the default and determined it was proper. (Miracle Aff. ¶ 9). Subject to the Park District's approval, Evergreen offered the Joint Venture the opportunity to complete the now-defaulted contract under the direction of Evergreen. (Def. 56.1 Resp. ¶ 14; Miracle Aff. ¶ 9).

On November 19, 2007, Evergreen and the Park District executed a new contract titled "Memorandum of Understanding and Agreement," pursuant to which, and in furtherance of its obligations as surety, Evergreen would, among other things, take over completion of the construction contract and complete the construction in accordance with the terms and conditions of the construction contract with the Joint Venture. (Def. 56.1 Resp. ¶ 13). On the same date, Evergreen and the Joint Venture executed a Completion Agreement, pursuant to which the Joint Venture would complete the construction under the direction of Evergreen and in accordance with the new

3

Completion Agreement.  (Def. 56.1 Resp. ¶ 14).

Upon taking over the defaulted contract, Evergreen discovered that the remaining contract funds were insufficient to fund the cost of performing the work.  (Miracle Aff. ¶ 12).  Evergreen therefore was required to use the collateral, which it deposited into the special escrow account.  (*Id.*) Even these funds were not enough to fund completion of the project, so Evergreen had to use its own funds to pay subcontractors and suppliers in order to complete performance of the construction contract.  (*Id.* ¶ 13).  Evergreen payed $39,705.78 to Crown Engineering Co., and $8,800.00 to European Iron Work.  (Def. 56.1 Resp. ¶ 16).  Evergreen has not been reimbursed for any of these payments. (*Id.*)

On or about February 18, 2010, having found the work by the Joint Venture under the Completion Agreement and the Indemnity Agreement to be deficient in multiple respects such that the Joint Venture's acts constituted a failure of performance, Evergreen terminated the Completion Agreement with the Joint Venture.  (Miracle Aff. ¶ 14; Miracle Aff. Exhibit A, Resp. to Specific Interrogatories ¶¶ 5, 7).  In May of 2010, Evergreen hired Madison Construction to complete the work remaining under the construction contract.  (Miracle Aff. ¶ 15).  Evergreen paid Madison Construction $29,937.00 for completing the project, which the Park District accepted as complete on July 30, 2010. (Def. 56.1 Resp ¶ 19d; Miracle Aff. ¶ 15).

The Park District continued to hold contract funds which it claimed were subject to back charges.  (Miracle Aff. ¶ 16).  After negotiations, Evergreen and the Park District agreed to a final contract balance of $61,613.01.  (*Id.*)  All of these funds were used to pay the Joint Venture and/or its subcontractors and suppliers.  (*Id.*)  In addition to the Park District's claim and demand for performance under the Performance Bond, Evergreen received several notices of nonpayments and

claims under the Payment Bond.  (Def. 56.1 Resp. ¶ 15).  These claims came from a variety of entities who claimed to have provided labor and/or materials under the contract or to the project. (*Id.* ¶ 15-16)  Mason's Local No. 803 Funds submitted a claim for unpaid wages in the amount of $24,000.00.  (*Id.* ¶ 15)  The Joint Venture did not dispute the amount owed, and after negotiations, Evergreen was able to settle Local 803's claim and paid to it $11,500.00 in furtherance of its Payment Bond obligation.  (*Id.*)  Evergreen has not been reimbursed for its payment to Local 803.  (*Id.*)  In addition to these claims for payments under the Payment Bonds, Evergreen has substantial legal and consulting fees which it incurred in investigating and defending various Payment Bond claims, investigating the Park District's Performance Bond claims, and managing and overseeing the various contracts and agreements that Evergreen entered into over the course of these affairs. (*Id.* ¶ 17, 19). Evergreen claims that it has incurred a net loss of $210,249.56 as a result of the Joint Venture's failure to perform the construction contract and that it has never been reimbursed for these losses. (*Id.* 19).

Evergreen brought suit in this Court against the Joint Venture, against each corporation individually, as well as against Rick Clark, Maureen Clark, Thomas W. Andrews, and Elizabeth Andrews ("Defendants") for breach of contract, specific performance, exoneration and common law reimbursement.  (Doc. 3, Complaint).  The gravamen of Evergreen's suit is that the Defendants are liable  to Evergreen for failing to reimburse it for its losses, fees and expenses under the Indemnity Agreement.  Evergreen claims that it is entitled to recover its payments made under the takeover agreement to claimants on the project, and to fees and expenses incurred in investigating and resolving Bond claims on the Performance and Payment Bonds and in enforcing the terms of the General Indemnity Agreement.  (Def. 56.1 Resp. ¶¶ 19-20).  After conducting discovery, Evergreen

moved for summary judgment, claiming that it is entitled as a matter of law to recover against the

Defendants under the Indemnity Agreement. At this stage of the litigation, Evergreen limited

briefing on its motion for summary judgment to its claims for indemnity based on the Joint Venture's

breach of contracts. The Defendants do not dispute any of these material facts; they merely deny an

obligation to pay Evergreen. (Def 56.1 Resp ¶ 21).[1] Furthermore, Defendants do not set forward

any material undisputed facts of their own to demonstrate that there is any issue that must be

resolved by a trial.[2] Defendants raise only a legal issue for summary adjudication; whether

Evergreen brought a timely suit.

## II. Choice of Law and the Standard of Review

Federal courts sitting in diversity apply state law to contract disputes and employ the choice-

of-law principles used by the forum state. *See United States Textiles, Inc. v. Anheuser-Busch Cos.,*

911 F.2d 1261, 1269 (7th Cir. 1990) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.,* 313 U.S. 487,

496 (1943)). As the Seventh Circuit has stated, "Courts do not worry about conflicts of laws unless

the parties disagree on which state's law applies." *Auto-Owners Ins. Co., v. Webslov Computing,*

*Inc.,* 580 F.3d 543, 547 (7th Cir. 2009). Although the parties do not seem to disagree over which

state's law to apply, this case raises choice-of-law issues that must be resolved prior to proceeding.

---

[1]Defendants' response to Evergreen's statement of fact to having losses in the amount of $210,249.56 states only that Defendants deny the fact (Pl 56.1 ¶ 20; Def. 56.1 Resp. ¶ 21). Defendants do not cite to any record evidence or supporting documentation in their denial. Such a naked assertion does not amount to a proper denial under Local Rule 56.1, and Evergreen's statement of fact is therefore deemed admitted.

[2]Defendants assert four additional statements of uncontested material facts relating to the Hanover Park Park District's notice of default to Evergreen and the Joint Venture (Def. 56.1 Additional Facts ¶¶ 1-4). These statements are properly supported by record evidence. Furthermore, Evergreen does not reply to these additional facts, and they are deemed admitted.

Thus this Court looks to Illinois choice-of-law principles to determine which state's law to apply to the underlying dispute. Under Illinois choice-of-law principles, Federal courts apply the laws of the forum state to purely procedural issues, even if the substantive law is provided by the laws of another state. *See Belleville Toyota v. Toyota Motor Sales, U.S.A.,* 199 Ill. 2d 325, 351 (2002) ("As to procedural matters, however, the law of the forum controls."). The General Indemnity Agreement, under which Evergreen brings its suit, states that it "shall be governed and interpreted by the laws of the State of Ohio." (Complaint Exhibit C, General Indemnity Agreement, VII(G)). Illinois courts routinely enforce contractual choice-of-law provision in contract disputes such as this one. *See Belleville*, 199 Ill 2d at 351. ("Generally, choice of law provisions will be honored."). Thus it is substantive Ohio contract law that governs Evergreen's claims for indemnification and breach of contract under the Indemnity Agreement and the Completion Agreement. Under Illinois law, however, statutes of limitations are considered purely procedural and therefore Illinois' applicable statute of limitations governs the timeliness of Evergreen's suit. *See Id.* ("Statutes of limitations are procedural, merely fixing the time in which the remedy for a wrong may be sought...Accordingly, Illinois law governs the timeliness of plaintiff's claim under [the contract]"). The parties do not seem to disagree over these choice-of-law issues. In their Reply to Evergreen's motion for summary judgment the Defendants invoke Illinois law as the basis for their statute of limitations defense. Evergreen does not dispute this choice of Illinois law–indeed, Evergreen claims that the relevant Illinois statute of limitations entitles them to summary judgment in their favor. Therefore, the Court applies Illinois law to the statute of limitations issue and applies Ohio contract law to the breach of contract claims.

Summary judgment is proper when "the pleadings, the discovery and disclosure materials

on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In determining whether a genuine issue of material fact exists, the Court must view the evidence and draw all reasonable inferences in favor of the party opposing the motion. *See Bennington v. Caterpillar Inc.*, 275 F.3d 654, 658 (7th Cir. 2001); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). However, on summary judgment the Court will limits its analysis of the facts to that evidence that is supported by the parties' Local Rule 56.1 statements properly before the Court. *Bordelon v. Chicago Sch. Reform Bd. of Tr.*, 233 F.3d 524, 529 (7th Cir. 2000). Where a proposed statement of fact is supported by the record and not adequately rebutted, for purposes of summary judgment the Court will accept that statement as true. An adequate rebuttal requires a citation to specific support in the record; an unsubstantiated denial is not adequate. *See Albiero v. City of Kankakee*, 246 F.3d 927, 933 (7th Cir. 2001); *Drake v. Minnesota Mining & Mfg. Co.*, 134 F.3d 878, 887 (7th Cir. 1998) ("'Rule 56 demands something more specific than the bald assertion of the general truth of a particular matter[;] rather it requires affidavits that cite specific concrete facts establishing the existence of the truth of the matter asserted.'").

## III. Discussion

### A. The Limitations Periods

It is evident from the facts described above that there are no genuine disputes as to any material facts that preclude summary adjudication of this matter. The only dispute raised by the parties concerns the applicable limitations period that this Court must apply to Evergreen's claim for relief. Defendants assert that Evergreen's suit is time-barred and they mount an attack on two fronts. First, Defendants assert that the Performance Bond itself contains a two-year limitations

8

period for the commencement of any action arising out of a party's default under the Performance Bond. Second, Defendants assert that pursuant to Illinois law 725 ILCS 5/13-204, a two-year statute of limitations applies to any indemnity action filed by Evergreen. Defendants contend that the two-year period imposed under this law began to run upon the first payment by Evergreen as a surety. Thus, according to Defendants' theory, Evergreen must have commenced this suit no later than November 2009 in order for it to be timely before this Court.

### i. The Limitations Period Under the Performance Bond

The Court begins with Defendants' argument that the Performance Bond itself contains a limitations period for the commencement of filing a suit under it and that Evergreen is outside of that period. Defendants have misconstrued not only Evergreen's cause of action against them, but also the Performance Bond itself. The Performance Bond that Evergreen issued as a surety to indemnify the Joint Venture outlines the duties owed by Evergreen to the owner or obligee of the Bond. The Bond states in its first paragraph that, "The Contractor and the Surety, jointly and severally, bind themselves, their heirs, executors, administrators, successors and assigns to the Owner, for the performance of the Construction Contract, which is incorporated herein by reference." (Complaint Exhibit A, Performance Bond ¶ 1). The "Owner" of the Bond is the Hannover Park Park District. The Performance Bond also states in pertinent part that, "No right of action shall accrue on this Bond to any person or entity other than the Owner or its heirs, executors, administrators, or successors." (*Id*. ¶ 7). The Performance Bond, in essence, was issued to ensure that Evergreen would be obliged to remedy any default by the Joint Venture and arrange for the completion of the construction project in the event that default occurred. If Evergreen were to fail in performing its obligation under the Performance Bond, the Hanover Park Park District would have the right to file suit against Evergreen

under the Bond. According to the Bond, the right to bring suit under it belongs exclusively to The Hanover Park Park District. Evergreen does not claim to state a cause of action against the Defendants under the Performance Bond. Indeed, Evergreen freely admits that it could not maintain any cause of action against the Defendants under the Bond. Although the Performance Bond contains a two-year period of limitations for the commencement of any suit under that Bond, only the Hanover Park Park District, and it alone, can bring a suit under the Bond. Evergreen brings its cause of action against Defendants under the General Indemnity Agreement and the Completion Agreement, the operative contracts which govern the relationship between Evergreen and the Joint Venture and establish their respective rights and obligations. Thus, the two-year limitations period barring causes of action under the Performance Bond does not bar Evergreen from bringing suit against the Defendants under the General Indemnity Agreement or the Completion Agreement.

### ii. The Statute of Limitations for Indemnity Actions Under Illinois Law

Next, Defendants argue that Illinois law imposes a two-year statute of limitations on indemnity actions and that Evergreen failed to timely file suit within the two-year period. *See* 735 ILCS 5/13-204. Evergreen argues that as a matter of Illinois law the ten-year statute of limitations period applicable to causes of action under written contracts pursuant to 735 ILCS 5/13-206 governs their claims against the Defendants and not the shorter period under 735 ILCS 5/13-204. In the alternative, Evergreen argues that even if the shorter two-year period were to apply, their suit would still be timely because Evergreen's cause of action accrued within the two-year period. The Court need not address Evergreen's second argument because controlling law from the Illinois Supreme Court settles the matter.

Facing the issue directly before the Court–which statute of limitations to apply to an

10

indemnity action under a written contract–the Illinois Supreme Court held in *Travelers Casualty &*

*Surety Company v. James A. Bowman* that the longer ten-year statute of limitations under 735 ILCS

5/13-206 governs a claim for indemnity arising out of a written contract. *See Travelers Casualty &*

*Surety Company v. James A. Bowman*, 299 Ill. 2d 461, 475-476 (2008). In that case, the Illinois

Supreme Court held that Section 13-204 "plainly address[es] cases involving the allocation of

damages in connection with an underlying tort claim for injury to person or property. Section 13-

204[ ] [is] not applicable when the basis for indemnity rests on a written indemnity agreement." *See*

*Id.* at 473. The Illinois Court overruled prior precedent and held that Section 13-204 applies "*only*

when action involves allocation of damages for *implied* indemnification." *Id.* at 474 (emphases

supplied). The Court held that, absent a specific contractual limitation, the ten-year statute of

limitations set forth in Section 13-206 applies to indemnity actions arising out of written contracts.

*Id.* at 475. No subsequent caselaw has altered this explicit holding, and this Court is obliged to

follow the Illinois Supreme Court's definitive interpretation of Illinois state law. Thus, the ten-year

statute of limitations applicable to causes of action arising out of written contracts governs

Evergreen's cause of action against the Defendants. Because Evergreen's cause of action obviously

accrued within ten years of the events that give rise to it, Evergreen's suit is timely in this Court.

**B. Breach of Contract and Defendants' Liability to Evergreen Under the Indemnity Agreement**
  *i. The Indemnity Agreement and the Prima Facie Clause*

The interpretation of the Indemnity Agreement and the Completion Agreement is governed

by Ohio law. Under Ohio law the indemnitor is required to indemnify the indemnitee in the manner

described by the contract of indemnity. *See Worth v. Aetna Casualty & Surety Co.,* 32 Ohio St. 3d

238, 240 (1987) ("Indemnity arises from contract, either express or implied, and is the right of a

11

person, who has been compelled to pay what another should have paid, to require complete reimbursement."). Ohio courts determine the intent of the parties by looking to the language of the contract of indemnity. *See Id.* ("The nature of an indemnity relationship is determined by the intent of the parties as expressed by the language used."); *see also Cleveland Window Glass & Door Co., v. National Surety Co.,* 118 Ohio St. 414, 418 (1928) ("A bond of indemnity should receive a reasonable construction in order to carry out the intention of the parties as expressed by the language used."). Under the General Indemnity Agreement executed and entered into between Evergreen and the Joint Venture, and incorporated by reference into the Completion Agreement, the Joint Venture, as the indemnitor, is required to, *inter alia*:

> ...exonerate, save harmless, indemnify, and keep indemnified [Evergreen] from and against ANY AND ALL LOSS WHATSOEVER, including but not limited to all demands, claims, liabilities, damages, costs, charges, fees, expenses, suits, orders, judgments, adjudications, and any other Losses of whatever nature or kind, which [Evergreen] pays or incurs or for which [Evergreen] becomes liable or has reason to believe it is, may be, or may become liable...for any reason whatsoever, including but not limited to:...6) Enforcement of any part of this Agreement by [Evergreen] against the [Joint Venture];...8) Fees, expenses, charges or costs associated with the [Joint Venture's] compliance with this Agreement or with demands made by [Evergreen] pursuant to C below; 9) Interest on sums paid by [Evergreen] for any of the above; and 10) Fees, expenses, charges and costs of personnel utilized by [Evergreen] in connection with any of the above, whether on salary or retainer or otherwise, including attorneys, investigators, adjusters, accountants, engineers, consultants, or any other experts or specialists deemed necessary by [Evergreen]...

(Complaint Exhibit C, General Indemnity Agreement ¶ II). Under the explicit terms of the Indemnity Agreement, Evergreen has an exclusive right, with or without notice to the Joint Venture, to determine the manner for resolving claims brought pursuant to the Indemnity Agreement. (*Id.* ¶ V).

12

Under these terms, Evergreen is permitted to take such steps as it deems necessary to protect itself

from any liability or losses arising under the Agreement and to determine whether any losses that are

actually incurred will be paid, settled, defended, etc. (*Id*.) Under this provision of the Agreement,

Evergreen maintains the right to seek indemnity from the Defendants, as the indemnitors, for any

losses Evergreen sustains as a result of indemnifying the Joint Venture and issuing Bonds for its

benefit, regardless of whether the Joint Venture has a defense to the losses. (*Id*.). Thus, the

Agreement embodies an affirmative duty on the part of the Defendants, as indemnitors, to indemnify

Evergreen for its losses, fees and expenses.

The Indemnity Agreement also contains what is know as a "prima facie clause," which states

that "an itemized statement of losses sworn to by an officer of [Evergreen] shall be prima facie

evidence of the fact and extent of the liability" on the part of the Joint Venture to Evergreen under

the Agreement. (*Id*. ¶ II(E)). Further, the prime facie clause states that the Joint Venture "waive[s]

any and all right to assert that [Evergreen], by its acts or omissions, incurred more Loss than

necessary or failed to recover as much as it might have..." (*Id*.) The clause itself contains an

explanation of its own purpose for its provision in the Agreement: "that swiftness may be more

critical than economy in fulfilling the spirit as well as the letter of [Evergreen's] obligations under

Bonds it Issues for [the Joint Venture]." (*Id*.) The delay that has resulted from this litigation has

certainly defeated, at least in part, the stated purpose of the clause but it has not diminished its effect.

Under Ohio law parties may enter into an indemnity contract that provides for the

reimbursement or recovery of legal expenses and attorneys fees, and a plaintiff bringing suit for the

breach of an indemnity agreement may recover such fees if they are incurred in connection with the

violation of the underlying contract. *See Worth*, 32 Ohio St. 3d at 240-241; *see also Capitol Indem.*

*Corp. v. Weatherseal Roofing & Renovation*, 2003 Ohio 3982, 2003 WL 21716002, ¶ 14 (Ohio App. 6 Dist. 2003). Ohio courts enforce prima facie clauses in the surety context. *See Cincinnati Ins. Co. v. Savarino Constr. Corp.,* No. 08-C-1061, 2011 WL 1068022, *8 (S.D. Ohio, March 21, 2011) (recognizing the validity of the prima facie clause and holding that it is conclusive proof of the surety's losses absent a contrary showing by the defendant and citing *Transamerica Insurance Co. v. Bloomfield*, 401 F.2d 357, 363 (6th Cir. 1968) (holding a prima facie clause valid and establishing the distinction between prima facie evidence and conclusive evidence)); *see also Associated Maint. & Roofing Co. v. Rockwell Int'l Corp.*, No. 6-93-11, 1994 WL 109003, *3-*4. (Ohio App. 3 Dist. 1994) (holding valid a prima facie clause, including a provision for attorney's fees, and finding the affidavit and itemized statement of the surety's agent sufficient to establish the amount of losses due). A prima facie clause provides for the introduction of rebuttal evidence of a surety's losses. *See Savarino*, 2011 WL 1068022 at *8. Such a clause essentially shifts the burden of proof, and requires the defendants in an indemnity action to show that the losses, costs or fees attested to are invalid or unreasonable. *See Id.* Defendants have provided no reason or argument as to why this Court should not enforce the prima facie clause now. Nor do the Defendants present any argument or supply any evidence to show that the losses attested to by Evergreen's officer are illegitimate or unreasonable. The affidavit of Gregory N. Miracle, the President of a third-party claims agent/administrator for Evergreen, satisfies the requirements of who may attest to losses under the prima facie clause, as well as the requirement that the losses be itemized. Because the Defendants carry the burden of proof to demonstrate that the evidence of losses attested to under the prima facie clause is not conclusive of the actual losses, and because they have not offered any evidence to meet that burden, the Miracle Affidavit serves as conclusive proof of Evergreen's losses, fees and

14

expenses. The Miracle Affidavit, a sworn statement containing an itemized list of Evergreen's losses, fees and expenses, is therefore definitive proof of the Defendants' liability to Evergreen under the Indemnity Agreement for the losses sustained by Evergreen as a result of the Joint Venture's failures to perform the construction project. Because the terms of the Indemnity Agreement, including the prima facie clause, are valid and were incorporated into the Completion Agreement, this Court must give them their effect and therefore hold the Defendants liable to Evergreen for indemnification in the amount sworn to by Miracle.

### ii. Breach of Contract

Even in the absence of the prima facie clause, Evergreen has proven that the Defendants breached the Indemnity Agreement and the Completion Agreement. (Indeed, Defendants do not present any arguments, facts, defenses or evidence to support the position that they are not in breach of contract.) Under Ohio law, a plaintiff in a breach of contract action must prove: (1) the terms of the contract; (2) performance by plaintiff; (3) breach by the defendant; (4) damages to the plaintiff; and (5) consideration. *See Nilavar v. Osborn*, 137 Ohio App. 3d 469, 483 (2000); *see also Doner v. Snapp*, 48 Ohio App. 3d 597, 600 (1994).

A valid contract under Ohio law exists when both parties consent to the terms, when there is a meeting of the minds, and when the terms of the contract are sufficiently certain. *See Hamilton Ins. Servs. v. Nationwide Ins. Cos.*, 86 Ohio St. 3d 270, 273 (1999); *see also McSweeney v. Jackson*, 117 Ohio App. 3d 623, 631 (1996). Evergreen had a valid contract with the Joint Venture for indemnification under the General Indemnity Agreement, an express contract between the parties. Under that contract, Defendants had an affirmative duty to indemnify Evergreen for losses sustained as a result of Evergreen issuing the Performance and Payment Bonds. The Defendants do not claim

that the General Indemnity Agreement was not a valid contract between it and Evergreen, nor do they dispute that the Completion Agreement likewise constituted a valid contract. Both were sufficiently certain in their terms and both were supported by consideration. Defendants do not dispute this. Likewise, neither party disputes that Evergreen performed its obligations under these agreements by issuing the Bonds and then stepping-in to complete the construction contract upon the Joint Venture's default.

A breach of contract occurs under Ohio law when the defendant does not perform one or more of the conditions of the contract. *See Jarupan v. Hanna*, 173 Ohio App. 3d 284, *P18 (2007) (citing *Little Eagle Props. v. Ryan*, 2004 Ohio 3830, P15 (Ohio App. 10 Dist. 2004)). Defendants clearly breached the General Indemnity Agreement by defaulting on the Performance and Payment Bonds and then refusing to indemnify Evergreen for the losses that arose from that default. Defendants also breached the Completion Agreement by failing to satisfactorily perform the construction services required by the Agreement and by refusing to pay Evergreen for the losses it incurred in having to find substitute performance–a further breach of the Indemnity Agreement, which was incorporated by reference into the Completion Agreement. Evergreen sustained damages from the Defendants' breach of the agreements insofar as it had to fulfill the Joint Venture's obligations to the Hanover Park Park District as well as to the Joint Venture's various subcontractors, and it had to investigate claims for payment of services and materials and pay or settle such claims. Defendants do not dispute the fact that they have not reimbursed or indemnified Evergreen for any portion of these damages. It is therefore clear that Evergreen entered into two valid contracts with the Joint Venture and fulfilled its obligations under those contracts by issuing Bonds, paying valid claims, and fulfilling the obligation to complete construction on the project. It

16

is also clear that the Defendants' breached both contracts by refusing to indemnify Evergreen for its losses, thus resulting in damages to Evergreen in the outstanding amount.

## IV. Conclusion

For the reasons set forth above, Evergreen's motion for summary judgment is granted as to Counts I and II of the complaint. Summary judgment is denied on Count III, which seeks specific performance, because that Count has become moot since the filing of the complaint. Counts IV and V are dismissed as moot. Defendants are ordered to indemnify Evergreen for breach of the Indemnity Agreement and the Completion Agreement and pay Evergreen for its losses, expenses and fees in an amount no less than $210,249.56.

Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: October 28, 2011